UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BALANCE STUDIO, INC., <br> Plaintiff, <br> v. <br> CYBERNET ENTERTAINMENT, LLC, <br> Defendant. | Case No. 15-cv-04038-DMR <br><br> **ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** <br> Re: Dkt. No. 80 |

Plaintiff Balance Studio, Inc., doing business as Kink Academy and KinkAcademy.com ("Kink Academy"), sues Defendant Cybernet Entertainment, LLC, doing business as Kink.com, for violations of the Lanham Act, 15 U.S.C. §§ 1114, 1125, and state law. Defendant moves for summary judgment. [Docket No. 80.] The court held a hearing on May 25, 2017. Having considered the parties' oral argument and written submissions, and for the reasons stated below as well as at the hearing, the court denies Defendant's motion.

**I.  BACKGROUND**

**A.  Factual Background**

The following facts are undisputed, unless otherwise noted. Plaintiff is a business that offers adult sexual education. [Docket No. 83-1 (Williams Decl., May 4, 2017) ¶ 4.] Plaintiff offers services through its website, kinkacademy.com, as well as seminars and coaching services by its founder, Kali Williams, that "focus on empowerment, confidence, and communication." *Id.* at ¶¶ 1, 4. Plaintiff launched the kinkacademy.com website in 2009. *Id.* at ¶ 8.

On April 1, 2009, Plaintiff applied for registration of its "Kink Academy" word and logo mark. [Docket No. 80-1 (Swanson Decl., Apr. 20, 2017) Ex. BB (Kink Academy application).][1]

---

[1] Defendant submitted the United States Patent and Trademark Office ("USPTO") documentation for Plaintiff's word and logo mark as exhibits to the declaration of Julien Swanson (Docket No.

On May 10, 2011, the USPTO granted Plaintiff's application and issued U.S. Trademark Registration Number 3958399 for the "Kink Academy" word and logo mark, as depicted below:



Swanson Decl. Ex. C (Kink Academy registration). According to the USPTO registration, Plaintiff's word and logo mark was first used on February 1, 2007 and first used in commerce on April 1, 2009. *Id*. It describes the mark as follows:

> The mark consists of large letter "K" in the color purple with a white and purple outline, a stylized graduation cap in black on top of the left leg of the "K", a black leash attached to the lower leg of the "K" going up and around to the left in a circular manner, with the text "Kink Academy" in black underneath the "K".

*Id*. The Kink Academy word and logo mark is registered in International Class 041 for "adult sexuality education, namely, through workshops, seminars, on-line video classes featuring information on adult role-play, bondage, domination and submission, fetishes and gender exploration designed to enhance couple's [sic] intimacy, and acknowledgement of one's own sexuality." *Id*.

Prior to the issuance of the registration, on July 1, 2009, the USPTO directed Plaintiff to disclaim the word "academy" in the mark "because it refers to the educational component of the identification" and was could not be registered. Swanson Decl. Ex. D (July 1, 2009 Office Action). It appears that Plaintiff then took no action on the application for several months, for on

---

80-1). It also filed a separate request for judicial notice of that documentation. [Docket No. 81.] Judicially noticeable facts are those not subject to reasonable dispute because they are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). A court may take judicial notice of "records and reports of administrative bodies." *Mack*, 798 F.2d at 1282 (citation omitted). Plaintiff does not object to the court taking judicial notice of the USPTO documentation regarding registration of the Kink Academy mark. Accordingly, the court grants Defendant's request and takes judicial notice of Exhibits A through BB. *See Oroamerica Inc. v. D&W Jewelry Co., Inc*., 10 Fed. Appx. 516, 517 n.4 (9th Cir. 2001) (taking judicial notice of USPTO registration certificates, patent file history, and patent application materials).

March 23, 2010, Plaintiff filed a petition to revive its abandoned application in which it disclaimed the "exclusive right to use Academy apart from the mark as shown." *Id*. Ex. E. The USPTO subsequently directed Plaintiff to disclaim the word "kink" as "merely descriptive of the subject matter of [Plaintiff's] adult sexuality education services . . ." *Id*. at Ex. F (Mar. 31, 2010 Office Action). On April 6, 2010, Plaintiff amended its disclaimer to read, "[n]o claim is made to the exclusive right to use "KINK ACADEMY" apart from the mark as shown." *Id*. at Ex. G.

Defendant is "a company that produces and markets BDSM[2] videos and materials, which [it] make[s] available to [its] members online, through [the] www.Kink.com website, its sub-channels and affiliated third parties." [Docket No. 80-2 (Acworth Decl., Apr. 18, 2017) ¶ 2.] According to its founder, Peter Acworth, Defendant "has been branded as Kink and Kink.com," and "has been known and referred to as Kink since at least 2006." *Id*. at ¶¶ 3, 4. Plaintiff's founder Williams states that Kink.com offers "[h]ard-core extreme porn entertainment; webcam video chat virtual prostitution services; and porn industry advocacy." Williams Decl. ¶ 18.

Although not clear from the record, in approximately 2014,[3] Defendant began operating a "Kink University" website accessible at kinkuniversity.com, and sought to trademark the term "Kink University." *See* Compl. ¶ 15; Swanson Decl. Ex. H (USPTO rejection of Defendant's application). Defendant sought to register the term "Kink University" in the area of "[e]ducation services, namely, providing live and on-line classes, panel discussions, tutorials, seminars, and workshops in the field of sexuality." *Id*. The USPTO rejected Defendant's application on July 23, 2014, finding a likelihood of consumer confusion between "Kink University" and Plaintiff's Kink Academy word and logo mark. *Id*. ("Registration of the applied-for mark is refused because of a

---

[2] The term "BDSM" "refers to a range of sexual preferences that generally relate to enjoyment of physical control, psychological control, and/or pain," and "can be broken down into six overarching components: bondage and discipline, domination and submission, and sadism and masochism." www.merriam-webster.com/dictionary/BDSM (last accessed on May 16, 2017).

[3] It is not clear when Defendant began operating the kinkuniversity.com website and sought to trademark the term "Kink University." Although Defendant asserts that it applied to register the term "Kink University" in 2014, it cites only to Plaintiff's unverified complaint in support of this fact. It did not submit its application for registration or other evidence supporting the date of its application. As discussed below, however, its registration application was rejected on July 23, 2014. Swanson Decl. Ex. H.

3

likelihood of confusion with the mark in U.S. Registration No. 3958399."). The USPTO explained the likelihood of confusion between Defendant's proposed "Kink University" mark and Plaintiff's registered Kink Academy word and logo mark as follows:

> In terms of the marks, the proposed mark is KINK UNIVERSITY, while the cited mark is comprised of the letter K with the design of a mortarboard and leash and the terms KINK ACADEMY. Considering that the terms UNIVERSITY and ACADEMY are descriptive for the educational services and that literal elements dominate over design elements, the dominant components of the marks are both KINK.
> . . .
> In this case, despite the differences in the marks, the terms UNIVERSITY and ACADEMY, each coupled with the dominant component KINK, convey the same idea, i.e., a traditional institute of higher learning juxtaposed next to the informal slang term for an unusual sexual preference. Therefore, the marks are similar in sound, appearance, and commercial impression.
>
> With respect to the services, those of the proposed mark are "Education services, namely, providing live and on-line classes, panel discussions, tutorials, seminars, and workshops in the field of sexuality", while those of the cited mark are "Adult sexuality education, namely, through workshops, seminars, on-line video classes featuring information on adult role-play, bondage, domination and submission, fetishes and gender exploration designed to enhance couple's intimacy, and acknowledgment of one's own sexuality". Because both of the services are educational services related to the topic of sexuality, they are related such that there is a likelihood of confusion if both of the marks were used for the respective services.

*Id.*

On April 14, 2015, the USPTO issued a final rejection of Defendant's trademark application for "Kink University," reiterating that the two marks "convey a similar commercial impression," and that the use of the term "Kink University" would likely cause consumer confusion with the "Kink Academy" word and logo mark. Swanson Decl. Ex. J.

**B. Procedural History**

Plaintiff filed the complaint on September 3, 2015. It alleges that despite the USPTO's determination, Defendant continues to infringe Plaintiff's Kink Academy word and logo mark by using the confusingly similar "Kink University" mark, and that the Kink University website is "designed to take advantage of the significant name recognition and goodwill surrounding Kink

4

Academy and its products." Compl. ¶¶ 24, 25. According to Williams, Kink Academy "offers adult sexual education" with a focus on "building trust and intimacy through bondage and sadomasochism," as well as "empowerment, confidence, and communication." Williams Decl. ¶ 4. In contrast, "Defendant uses their 'Kink University' brand in connection with porn services including live chat rooms and pornographic videos." *Id*. at ¶ 7. Williams states that "Kink University is not truly an educational branch of Defendant's business." *Id*. Plaintiff further alleges that it has suffered monetary damage in the form of diverted traffic and lost sales, and that Defendant is damaging the valuable reputation and goodwill in Plaintiff's brand by "marketing pornography videos under the guise of educational videos." *Id*. at ¶ 26. Finally, Plaintiff alleges that actual confusion has already occurred between Kink Academy and Kink University, *id*. at ¶ 27, and submits evidence of what it claims is actual consumer confusion between the two businesses. *See* Williams Decl. ¶ 15 Ex. C. Plaintiff alleges the following claims for relief: 1) trademark infringement under 15 U.S.C. § 1114; 2) false designation of origin under 15 U.S.C. § 1125(a); and 3) unfair competition under California Business & Professions Code § 17200 *et seq*. ("UCL").

Defendant filed a counterclaim for cancellation of Plaintiff's Kink Academy word and logo mark. [Docket No. 50.] It also alleges counterclaims against Plaintiff and its founder, Kali Williams, for trademark infringement under 15 U.S.C. § 1114, false designation of origin under 15 U.S.C. § 1125(a), and unfair competition under the UCL. Defendant now moves for summary judgment on all of Plaintiff's claims.

## II. LEGAL STANDARDS

A court shall grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden of establishing the absence of a genuine issue of material fact lies with the moving party, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986), and the court must view the evidence in the light most favorable to the non-movant. *See Scott v. Harris*, 550 U.S. 372, 378 (2007) (citation omitted). A genuine factual issue exists if, taking into account the burdens of production and proof that would be required at trial, sufficient evidence favors the non-movant such that a

1 reasonable jury could return a verdict in that party's favor. *Anderson v. Libby Lobby, Inc.*, 477 U.S. 242, 248. The court may not weigh the evidence, assess the credibility of witnesses, or resolve issues of fact. *See id.* at 249.

To defeat summary judgment once the moving party has met its burden, the nonmoving party may not simply rely on the pleadings, but must produce significant probative evidence, by affidavit or as otherwise provided by Federal Rule of Civil Procedure 56, supporting the claim that a genuine issue of material fact exists. *TW Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citations omitted). In other words, there must exist more than "a scintilla of evidence" to support the non-moving party's claims, *Anderson*, 477 U.S. at 252; conclusory assertions will not suffice. *See Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Similarly, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts" when ruling on the motion. *Scott*, 550 U.S. at 380.

### III. DISCUSSION

#### A. Trademark Infringement Claims

Plaintiffs' first and second claims are for trademark infringement under 15 U.S.C. § 1114 and false designation of origin under 15 U.S.C. § 1125(a). At the hearing, Plaintiff clarified that it only challenges Defendant's use of the term "Kink University." Plaintiff argues that Defendant's use of "Kink University" infringes Plaintiff's Kink Academy word and logo mark because it is confusingly similar to Plaintiff's mark. Plaintiff does not challenge Defendant's use of its registered marks "Kink.com" or "Kink," or the design mark associated with Kink University.

"To establish a trademark infringement claim under section 32 of the Lanham Act or an unfair competition claim under section 43(a) of the Lanham Act, [a plaintiff] must establish that [a defendant] is using a mark confusingly similar to a valid, protectable trademark of [the plaintiff's]." *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1046 (9th Cir. 1999) (citing *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-39 (9th Cir. 1979), *abrogated on other grounds by Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003)); *see also La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 874 (9th Cir. 2014) ("To show

trademark infringement, a plaintiff must establish ownership of a trademark and a likelihood of consumer confusion."). "Federal registration of a trademark 'constitutes prima facie evidence of the validity of the registered mark and of [the registrant's] exclusive right to use the mark' in commerce." *Quiksilver, Inc. v. Kymsta Corp.*, 466 F.3d 749, 755 (9th Cir. 2006) (quoting *Brookfield*, 174 F.3d at 1047). The presumption of validity, including the presumption that the mark is inherently distinctive, "is a strong one, and the burden on the defendant necessary to overcome that presumption at summary judgment is heavy." *Zobmondo Entm't, LLC. v. Falls Media, LLC*, 602 F.3d 1108, 1115 (9th Cir. 2010).

Defendant moves for summary judgment on all of Plaintiff's claims on the grounds that Plaintiff's trademark registration is invalid.[4] At the hearing, it clarified that it asserts three bases for invalidity.[5] Each is addressed below.

### 1. Intent to Use the Mark

Defendant first argues that Plaintiff's trademark registration is void because Plaintiff did not have a bona fide intent to use the Kink Academy word and logo mark in commerce at the time it filed its registration application in 2009.

"A bona fide intent to use the mark in commerce is a statutory requirement of a valid intent-to-use trademark application under § 1(b) of the Lanham Act." *Bobosky v. Adidas AG*, 843 F. Supp. 2d 1134, 1140 (D. Or. 2011) (citing 15 U.S.C. § 1051(b)(1)). "Section 1(b) requires both

---

[4] Plaintiff's third claim for violation of the UCL based on infringement is "substantially congruent" to its Lanham Act claims. *See Cleary v. News Corp.*, 30 F.3d 1255, 1262-63 (9th Cir. 1994). Defendant moves for summary judgment on Plaintiff's UCL claim on two grounds, including invalidity. The second ground, failure to show lost sales, is discussed below.

[5] In order to establish an infringement claim, a plaintiff must also show a likelihood of confusion. Courts weigh eight factors, referred to as the *Sleekcraft* factors, to determine whether a likelihood of confusion exists. *See La Quinta*, 762 F.3d at 874 (citing *Sleekcraft*, 599 F.2d at 348-49). Defendant did not address the *Sleekcraft* factors in its motion and clarified at the hearing that it does not seek summary judgment on the issue of likelihood of consumer confusion, conceding that it involves disputed material facts. *See, e.g., Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1209 (9th Cir. 2012) (cautioning that "district courts should grant summary judgment motions regarding the likelihood of confusion sparingly, as careful assessment of the pertinent factors that go into determining likelihood of confusion usually requires a full record." (quotation omitted)). Accordingly, the court need not reach Plaintiff's arguments regarding the admissibility of the opinions of Defendant's purported expert, Jackie Bruckman, since her opinions appear to go to the question of consumer confusion.

actual intent to use the mark in commerce and evidence that objectively demonstrates such an intent." *Id*. (citations omitted). "Lack of bona fide intent to support an intent-to-use application . . . may render an application void ab initio upon challenge in federal district court." *Id*. (citing *Caesars World, Inc. v. Milanian*, 247 F. Supp. 2d 1171, 1192-93 (D. Nev. 2003) (following a bench trial, holding that defendant's applications "were not made with a bona fide intent to use and are void.")).

On September 13, 2010, in connection with its registration application for the Kink Academy word and logo mark, Plaintiff submitted a "Trademark/Service Mark Statement of Use," identifying two Kink Academy logo specimens. Swanson Decl. Ex. G-1. The first specimen showed a green chalkboard with the words "Kink Academy" in white letters to the right of the design element, and the second showed Plaintiff's Kink Academy word and logo mark printed on a tote bag, as follows:

 

*Id*. On October 19, 2010, the USPTO rejected the specimens. As to the chalkboard image, the USPTO noted that it was inconsistent with Plaintiff's claimed mark, because Plaintiff's mark included the words "Kink Academy" in black directly below the design element. In contrast, the chalkboard image showed the words in white to the right of the design element. Swanson Decl. Ex. G-2. As to the tote bag, the USPTO noted that "[u]se of the mark on goods does not support a finding that applicant is using the mark for the services listed in the application," namely, International Class 041 for "adult sexuality education, namely, through workshops, seminars, on-line video classes featuring information on adult role-play, bondage, domination and submission, fetishes and gender exploration designed to enhance couple's [sic] intimacy, and acknowledgement of one's own sexuality." *Id*.; *see also* Kink Academy registration.

Defendant argues that this evidence shows that Plaintiff had no intent to use its mark for the described services, and "has never used its mark in relation to its described services." Mot. 19. Defendant also submits evidence that at various times, Plaintiff used different versions of its registered mark on its kinkacademy.com website, including the chalkboard image that was rejected by the USPTO in 2010. *See* Swanson Decl. Exs. V-Y.

Plaintiff responds that it has used its registered Kink Academy word and logo mark in commerce and continues to do so, and submits evidence depicting the registered mark 1) printed on a gift certificate for a kinkacademy.com membership; 2) used as Kink Academy's Instagram account avatar; 3) appearing on a 2009 screenshot from the kinkacademy.com website; 4) printed on promotional clothing; and 5) printed on the DVD cover for the educational video titled, "Kink Academy Princess Kali—Introduction to Domination." Williams Decl. ¶ 14 Ex. B.

In its reply, Defendant argues without explanation that the "only acceptable specimen of use presented to show actual use in commerce regarding Plaintiff's online services" is the 2009 screenshot of the Kink Academy website. Reply 14; *see* Williams Decl. Ex. B (Docket No. 83-1 at ECF p. 17). In so doing, Defendant effectively concedes that Plaintiff has established a dispute of fact on this point. Beyond that, Defendant's position is far from clear. Defendant appears to argue that Plaintiff's mark is registered in a class that is confined to on-line video classes, and therefore, use of the mark outside of that context does not establish actual use in commerce. *See* Reply 14. The basis for Defendant's argument is factually incorrect. Plaintiff's mark is registered in International Class 041, which is "adult sexuality education . . . through workshops, seminars, [and] on-line video classes." As such, the registered use of the mark includes workshops and seminars that are not restricted to an on-line format. Plaintiff has presented evidence of actual use of the registered mark in commerce, i.e., the screenshot of the Kink Academy website, gift certificate, Instagram avatar, promotional clothing, and DVD cover. A reasonable jury could conclude that such uses of Plaintiff's registered mark establish bona fide intent to use the mark in commerce for the services listed in its application, namely, "adult sexuality education . . . through workshops, seminars, [and] on-line video classes." Accordingly, summary judgment on trademark invalidity based on Plaintiff's alleged failure of intent to use the mark is denied.

9

### 2. Fraud

Defendant next argues that Plaintiff's mark is subject to cancellation due to alleged fraud in connection with Plaintiff's trademark application. "A party may seek cancellation of a registered trademark on the basis of fraud under 15 U.S.C. § 1064(c) by proving a false representation regarding a material fact, the registrant's knowledge or belief that the representation is false, the intent to induce reliance upon the misrepresentation and reasonable reliance thereon, and damages proximately resulting from the reliance." *Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1444 (9th Cir. 1990) (citing *San Juan Products, Inc. v. San Juan Pools of Kansas, Inc.,* 849 F.2d 468, 473 (10th Cir. 1988)). False statements in an incontestability affidavit "provide[] a basis for canceling the registration itself." *Id.* (citations omitted). Further, "[a] party may allege fraud in the procurement of a trademark by showing, *inter alia*, that a trademark applicant knowingly and falsely declared under oath in conjunction with the trademark application that 'no other person, firm, corporation, or association . . . has the right to use such mark in commerce.'" *AirWair Int'l Ltd. v. Schultz*, 84 F. Supp. 3d 943, 952 (N.D. Cal. 2015) (quoting *Rosso & Mastracco, Inc. v. Giant Food Inc.*, 720 F.2d 1263, 1266 (Fed. Cir. 1983)).

Defendant challenges allegedly fraudulent statements made by Plaintiff in its 2009 registration application and 2016 incontestability declaration.

#### a. 2009 Registration Application

Plaintiff's 2009 registration application contains the following declaration made under penalty of perjury:

> to the best of [the undersigned's] knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive . . .

Swanson Decl. Ex. BB (Kink Academy application). The declaration was signed by an unnamed President of "Balance Studios." *Id*. Defendant argues that this statement was a misrepresentation because Plaintiff's founder was personally aware of Defendant's branding and "educational ventures," *see* Acworth Decl. ¶¶ 10, 11, and was therefore obligated to disclose Defendant's similar Kink.com and Kink marks.

The court finds that there are numerous disputes of fact as to whether the statement in the 2009 application constitutes a "false representation regarding a material fact." *Robi*, 918 F.2d at 1444. To begin with, Defendant seems to argue that Plaintiff lied to the USPTO by not disclosing that Defendant could also have the right to use the mark that Plaintiff sought to register. Plaintiff's failure to identify Defendant's alleged and highly debatable right to use Plaintiff's mark does not amount to a "false representation regarding a material fact." A trademark applicant "is not 'obligate[d] . . . to investigate and report all other possible users of an identical or confusingly similar mark.'" *AirWair*, 84 F. Supp. 3d at 952 (quoting *Rosso*, 720 F.2d at 1266). Instead, an applicant must only disclose "conflicting rights" of another user "which are clearly established, for example, by a court decree, by the terms of a settlement agreement, or by a registration." *Rosso*, 720 F.3d at 1266; *see, e.g., Robi*, 918 F.2d at 1444 (trademark user made "clearly false" statement in trademark registration application where she failed to acknowledge conflicting rights of another user which were established by prior court decision). Moreover, the "statement of an applicant that no other person 'to the best of his knowledge' has the right to use the mark does not require the applicant to disclose those persons whom he may have heard are using the mark *if he feels that the rights of such others are not superior to his.*" *Quiksilver*, 466 F.3d at 755 (quoting *Yocum v. Covington*, 216 U.S.P.Q. 210, 216-17 (T.T.A.B. 1982)) (emphasis in original). A trademark applicant "is not 'obligate[d] . . . to investigate and report all other possible users of an identical or confusingly similar mark.'" *AirWair*, 84 F. Supp. 3d at 952 (quoting *Rosso*, 720 F.2d at 1266).

Additionally, there are other elements of fraud that Defendant completely fails to discuss, i.e., Plaintiff's knowledge that the representation was false, Plaintiff's intent to induce reliance upon the misrepresentation, the USPTO's reasonable reliance on the misrepresentation, and damages resulting from the reliance. *See Robi*, 918 F.2d at 1444. Williams states that she "never had any intent to deceive the Trademark Office," and that "[a]ll [of] the documents filed by me or on my behalf in the Trademark Office were filed in good faith." Williams Decl. ¶ 28. For these reasons, Defendant is not entitled to summary judgment on its theory of invalidity based on fraud in the 2009 application.

### b. 2016 Incontestability Declaration

11

After Plaintiff filed the instant litigation, Defendant instituted proceedings with the Trademark Trial and Appeal Board ("TTAB") to cancel Plaintiff's mark. *See* Swanson Decl. Ex. U (Sept. 21, 2016 Office Action referencing cancellation proceeding). On July 12, 2016, Plaintiff filed a declaration of incontestability and continued use under penalty of perjury before the USPTO. It states as follows:

> The mark is in use in commerce on or in connection with the goods/services, or to indicate membership in the collective membership organization . . . as evidenced by the attached specimen(s) showing the mark as used in commerce. *The mark has been in continuous use in commerce for five consecutive years after the date of registration* . . . and is still in use in commerce on or in connection with all goods/services, or to indicate membership in the collective membership organization, listed in the existing registration . . . and *there is no proceeding involving said rights pending and not disposed of in either the U.S. Patent and Trademark Office or in a court*.

Swanson Decl. Ex. Z (emphasis added). The declaration was signed by Robert Edwards, President of Balance Studio, Inc., on July 12, 2016.

Defendant argues that the declaration contains two falsehoods. First, Defendant argues that the statement that there was "no proceeding involving [Plaintiff's ownership rights in the mark] pending" in court or at the USPTO was false because Defendant had instituted cancellation proceedings against the mark. Plaintiff does not dispute that its statement is incorrect. In fact, on September 21, 2016, the USPTO pointed out the inaccuracy of Plaintiff's statement. It issued an Office Action in which it stated that the declaration "cannot be acknowledged because there is a pending proceeding before the [TTAB] involving ownership of the subject registered mark." Swanson Decl. Ex. U. Since the USPTO rejected the affidavit, it does not appear that Defendant will be able to establish that the USPTO reasonably relied on Plaintiff's false statement. At the very least, whether the USPTO reasonably relied on the false statement and whether its reliance resulted in damages present factual disputes. *See Robi*, 918 F. 2d at 1444. Moreover, Defendant must also establish Plaintiff's knowledge that the representation was false, as well as its intent to induce reliance upon the misrepresentation.

Defendant also challenges Plaintiff's statement in the 2016 incontestability declaration that it has been continuously using the mark in commerce for five consecutive years after registration.

Defendant claims that evidence shows that Plaintiff has used different versions of its registered mark on its website kinkacademy.com, including the chalkboard image that was rejected by the USPTO in 2010, and versions of the mark that feature the words "Kink Academy" to the right of the design element instead of immediately below. Swanson Decl. Exs. W, X, Y. Defendant asserts that the current version of Plaintiff's website features a different unregistered version of its mark. *See* Swanson Decl. Ex. Y. Relying on this evidence, Defendant argues that Plaintiff falsely represented to the USPTO that it has continuously used the registered mark for five years.

In response, Plaintiff points to evidence that it has used its registered Kink Academy word and logo mark in commerce and continues to do so. Williams Decl. ¶ 14. It relies on the same evidence described above in connection with the parties' dispute about Plaintiff's intent to use its mark, including evidence that Plaintiff used the registered Kink Academy word and logo mark on a gift certificate for a kinkacademy.com membership, as its Instagram account avatar, on a 2009 version of the kinkacademy.com website, on promotional clothing, and on the DVD cover for an educational video. *See id*. Ex. B. The court finds that this evidence demonstrates a triable issue of fact as to the truthfulness of Plaintiff's 2016 statement to the USPTO about its continuous use of the mark in commerce. Further, in light of Williams's statement that she "never had any intent to deceive the Trademark Office," and that "[a]ll [of] the documents filed by me or on my behalf in the Trademark Office were filed in good faith," Williams Decl. ¶ 28, the court finds that whether Plaintiff intended to induce reliance on the statement about its continuous use of the mark is disputed. Defendant's motion for summary judgment based on alleged fraud in the 2016 declaration is therefore denied.

### 3. Invalidity Based on Weakness of the Mark

Defendant's third invalidity argument focuses on what it describes as the "weakness" of Plaintiff's Kink Academy word and logo mark. Although its argument was not clearly presented in either its motion or at the hearing, Defendant appears to assert that Plaintiff's mark is invalid because of its disclaimer of the words "kink" and "academy" in its word and logo mark, as well as

13

Defendant's senior rights in the marks "Kink.com" and "kink."[6] As best as the court can understand, Defendant seems to argue as follows: according to the USPTO, the word "kink" is the dominant portion in both Plaintiff's Kink Academy word and logo mark and Defendant's rejected Kink University mark. *See* Swanson Decl. Ex. H. Defendant holds senior, exclusive rights to the word "kink," since it has owned the trademark registration for "Kink.com" since 2008 and first used the mark in commerce in 2006. Swanson Decl. Ex. A (Feb. 5, 2008 registration for Kink.com). On April 14, 2015, in connection with its final rejection of the mark "Kink University," the USPTO stated, "[t]he claim of acquired distinctiveness in part as to the term 'KINK' based on prior U.S. Registration No. 3379745 [Kink.com] is accepted and made of record." *Id*. at Ex. J (Apr. 14, 2015 USPTO Office Action). Therefore, Defendant has acquired secondary meaning to the word "kink." In 2016, Defendant registered the term "kink" as a standalone mark with first use in 2006. *Id*. at Ex. L (Defendant's USPTO 2016 registration of the word KINK). Accordingly, since Defendant holds senior, exclusive rights to the dominant portion of Plaintiff's Kink Academy word and logo mark, "Plaintiff's mark should be cancelled as its registration conflicts with the senior use rights of Defendant to the dominant component." Mot. 22.[7]

Defendant thus seems to be arguing that Plaintiff's mark is invalid because Defendant holds senior rights to the disclaimed portions of Plaintiff's mark. This violates the anti-dissection rule, under which "the validity and distinctiveness of a composite trademark is determined by viewing the trademark *as a whole*, as it appears in the marketplace." *Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1392 (9th Cir. 1993) (emphasis added) (citing *California Cooler, Inc. v. Loretto Winery Ltd.*, 774 F.2d 1451, 1455 (9th Cir. 1985) ("[T]he composite may become a distinguishing mark even though its components individually cannot.")). For example, in *Official*

---

[6] Defendant clarified at the hearing that it is not relying on the tacking doctrine to invalidate Plaintiff's mark. *See Quiksilver*, 466 F.3d at 758 (explaining that "[u]nder the tacking doctrine, a mark owner 'essentially seeks to tack his first use date in the earlier mark onto the subsequent mark.'" (quoting *Brookfield*, 174 F.3d at 1048)).

[7] Defendant asserts, somewhat confusingly, that it "is not claiming that Plaintiff's mark is invalid because of the fact of the disclaimers." Reply 5. This collides with its "weak mark" invalidity argument, which appears to rest on Plaintiff's disclaimers of the words "kink" and "academy."

*Airline Guides*, the plaintiff held rights in the mark "OAG TRAVEL PLANNER" as "an arbitrary composite trademark protectable without proof of secondary meaning, even though the term 'travel planner' is descriptive." 6 F.3d at 1391, 1392 (citing *Official Airline Guides, Inc. v. Goss*, 856 F.2d 85, 87 (9th Cir. 1988)). In analyzing the composite mark under the *Sleekcraft* factors, the district court considered the strength of the mark "by examining its component parts and found that the term 'Travel Planner,' standing alone, is descriptive and therefore weak." *Id*. at 1392. The Ninth Circuit held that the district court's approach amounted to error because it violated the anti-dissection rule. *Id*. Here, despite acknowledging the existence of the anti-dissection rule, *see* Mot. 12, Defendant essentially asks the court to ignore it and deem Plaintiff's composite mark invalid based on its component parts and the fact of their disclaimers. Defendant's position flies in the face of well-established Ninth Circuit law. *See, e.g., Sleeper Lounge Co. v. Bell Mfg.Co.*, 253 F.2d 720, 722 n. 1 (9th Cir. 1958) ("[d]isclaimed material forming part of a registered trademark cannot be ignored. It is still part of the composite trademark which must be considered in its entirety.").

At the hearing, Defendant cited *Reserve Media, Inc. v. Efficient Frontiers, Inc*., No. CV 15-05072 DDP (AGRx), 2017 WL 123420 (C.D. Cal. Jan. 11, 2017), in support of its position that a finding of invalidity is appropriate on these facts. However, that case does not support Defendant's argument. In *Reserve Media*, plaintiff Reserve Media, Inc. ("Reserve") moved for partial summary judgment on the defendant's trademark infringement claims. 2017 WL 123420, at *1-2. The defendant, Efficient Frontiers, Inc. ("EFI"), asserted that Reserve infringed EFI's registered marks Reserve Interactive + design, Reserve Anywhere, Reserve Q, Reserve Interactive, and Reserve Cloud. It also asserted infringement of its unregistered marks, including Reserve University. *Id*. at *2. In relevant part, Reserve moved for summary judgment on five of the marks, arguing that they were unprotectable as a matter of law because they were descriptive and lacked secondary meaning. *Id*. The court agreed with Reserve. *Id*. at *4-8. In particular, the court concluded that the mark "Reserve University" was descriptive, noting that EFI had "confirmed at oral argument that, if Reserve University were enforceable, it would also seek to prevent others from using phrases such as Reserve Academy." *Id*. at *5. The court explained that

15

1 "[t]his further underscores the risks of permitting a party to enforce marks that are broadly
2 descriptive of an entire category of goods, as is the case here with training modules for reservation
3 software." *Id*. The court also concluded that EFI had failed to show that "consumers recognize
4 the five marks found to be descriptive . . . as originating from a single source," and thus the marks
5 lacked secondary meaning. *Id*. at *7-8.

6 Defendant says that it does not cite *Reserve* to support invalidation of Plaintiff's word and
7 logo mark on the basis that the mark as a whole is descriptive. *See* Reply 4. However, Defendant
8 appears to rely on *Reserve* to argue that a mark consisting of a disclaimed word such as "kink" that
9 is appended to a term such as "university" or "academy" is descriptive and therefore
10 unenforceable as a matter of law. *Reserve* says no such thing. To the extent that Defendant's
11 invalidity argument focuses on the words "Kink Academy," Defendant must not only establish
12 that they are descriptive, but that they lack secondary meaning. Defendant has made no attempt to
13 do so. More importantly, in any event, such an argument does not hold water because Plaintiff
14 owns rights in a *composite* mark, which must be considered in its entirety. *See Sleeper Lounge*,
15 253 F.2d at 722.

16 Defendant offers no other support for its position. Its motion for summary judgment on
17 invalidity based on the alleged weakness of Plaintiff's mark is denied.

### B. Liability Under the UCL

19 Defendant asserts that it is entitled to summary judgment on Plaintiff's third claim for
20 violation of the UCL. First, it acknowledges that state unfair competition claims are "substantially
21 congruent" to Lanham Act claims, *see Cleary v. News Corp*., 30 F.3d 1255, 1262-63 (9th Cir.
22 1994), and argues that Plaintiff's UCL claim rises and falls with its trademark infringement
23 claims. For the same reasons discussed above, the court finds that Plaintiff has demonstrated
24 triable issues of fact as to the validity of its mark and denies summary judgment on Plaintiff's
25 UCL claim on this ground.

26 Defendant also argues that UCL claims require proof of actual loss of sales, in contrast
27 with trademark infringement claims, which presume loss based on proof of use of the mark and
28 evidence of sales. Mot. 25 (citing *Brooks Bros. v. Brooks Clothing of Cal., Ltd*., 60 F. Supp. 442,

447 (S.D. Cal. 1945)). According to Defendant, Plaintiff produced profit and loss and cash flow statements, and Defendant's counsel states that he "determined that the Plaintiff's income for the years 2014, 2015 and 2016, the years where Defendant's Kink University website was active, correlated directly and almost exactly to the Plaintiff's business expenses for the corresponding year, leaving Plaintiff unable to prove any loss resulting from Defendant's activities." *Id*.; *see* Swanson Decl. ¶ 34. Inexplicably, Defendant did not submit the profit and loss and cash flow statements because the information is protected by the stipulated protective order (*see* Docket No. 63 (Protective Order)). *See id*. at ¶ 33. This is another head-scratcher, as the Protective Order sets forth procedures for seeking leave to file protected material under seal. *See* Protective Order at § 14.3.

In response, Williams states that Plaintiff "operates the Kink Academy website at a high gross margin, with very low ongoing costs," and that "adding incremental sales revenue has minimal impact on costs, and is almost entirely profit." Williams Decl. ¶ 22. According to Williams, "there is nothing more profitable than adding another subscriber, because there is no incremental unit cost to service the customer," and that "the damage from Defendant's infringement is so significant [because] it has deprived Kink Academy of the expected sales and traffic growth on which its profitable operation was based." *Id*. at ¶ 23. She also asserts that Kink Academy's monthly website visitors plummeted after Defendant launched the Kink University website in 2014. *Id*. at ¶ 25.

Given Defendant's failure to submit evidence in support of its argument that Plaintiff cannot prove loss due to Defendant's alleged infringement, as well as the existence of disputed material facts, the court denies summary judgment as to the UCL claim.

### IV. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is denied.

**IT IS SO ORDERED.**

Dated: June 8, 2017

Donna M. Ryu
United States Magistrate Judge

17